UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COLLETTE R. PINCHEON,

                        **Plaintiff,**

    v.                                                       1:12-CV-01161

**GABRIEL HANDY, Individually and as
Trustee of the DDH-GSH TRUST d/b/a
DAYS INN a/k/a DAYS INN COLCHESTER
BURLINGTON; DDH-GSH TRUST;
and DAYS INNS WORLDWIDE, INC.,**

                        **Defendants.**
_____

**THOMAS J. McAVOY,
Senior United States District Judge**

## DECISION and ORDER

**I.    INTRODUCTION**

Plaintiff Collette R. Pincheon brings this action alleging that Defendants negligently maintained a flight of stairs within the Days Inn Colchester hotel, and as such, caused damages to Plaintiff. See Compl., dkt. #1. Defendants move pursuant to FED. R. CIV. P. 56 for summary judgment in their favor. See Mot., dkt. # 44. Plaintiff opposes the motion, and Defendants have filed a reply. The Court has considered all of the documents filed in relation to this motion. For the reasons that follow, the motion is granted in part and denied in part.

**II.    STANDARD OF REVIEW**

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v.

1

Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

### III.   BACKGROUND

This action arises from Plaintiff's fall and resulting injury on March 5, 2010 on the premises of the Days Inn Colchester hotel located in Colchester, Vermont.  Plaintiff alleges that, while staying at Defendants' hotel, she was injured as a result of a hazardous condition consisting of water and a slippery surface on or around the steps inside the

hotel.

Plaintiff testified that, in March 2010, she was part of a group that traveled to Colchester, Vermont for a co-ed youth hockey tournament. Pincheon Trans. at 7-9. A number of parents rented rooms at the Days Inn Colchester hotel. Id. at 7. On Friday, March 5, 2010, at approximately 3:40 p.m., Plaintiff and her daughters P. and M. arrived at the hotel and checked in. Id. at 10-12, 20-22. They were assigned to room 102. Id. at 12-13. To access the room, Plaintiff proceeded into the hotel lobby, entered a doorway to the left, and went up two sets of stairs to the first-floor hallway. Id. at 13-14. There was also a door on the right side of the lobby to the hotel's pool. Id. at 27. Plaintiff recalled that people were using the pool while she was checking in to the hotel, and observed people using the pool throughout her stay at the hotel. Id. at 50-51. Plaintiff testified that snow was present outside the hotel while she was there. Id. at 49. Plaintiff did not recall seeing any wet floor caution signs in the hotel lobby during her stay. Id. at 49. Between the time of checking in and the time of her accident, Plaintiff did not observe any hotel staff mop any areas of the hotel. Id. at 48-49.

Plaintiff's daughter P. was scheduled to play in a hockey game at a nearby rink at approximately 8:00 p.m on March 5, 2010. Id. at 20, 24-25. After the hockey game ended, Plaintiff and her daughters returned to the hotel room shortly after 9:00 p.m. Id. at 26. Plaintiff's daughter M., who was four years old, asked Plaintiff to carry her downstairs to the lobby so that she could see the pool area. Id. at 31-32, 40. Holding M. in her arms, Plaintiff proceeded from the first-floor hallway down the stairs. Id. at 32, 35. Plaintiff testified:

> I started down the stairs. I took approximately two steps when I slipped ... I tried to catch myself because I was holding [M.] and I didn't want her to get hurt. When I came down, I landed on the outside on the lateral part of my right foot. I felt something break in my ankle ... After I felt this snap in my ankle, I fell directly on my knee and I fell down the last few stairs and landed on the very bottom of the landing right near [the door to the lobby].

Id. at 33-36. After Plaintiff stood up, she looked toward the top of the stairwell and observed a pool of water approximately one foot wide on the second step down from the top of the stairwell. Id. at 40-41,44-45. Plaintiff alleges that, as a result of defendants' negligence, she sustained injuries consisting of, among other things, a fractured fibula, a right lower deep venous thrombosis, and the need for knee surgery.

In opposition to the motion, Plaintiff also submitted, *inter alia,* an affidavit from Angel Emery. Ms. Emery averred that she was a guest at the Days Inn Colchester hotel from March 5, 2010 through March 7, 2010. Emery Affid, at ¶ 1. When she checked in at the hotel in the early afternoon on Friday, March 5, 2010, she did not see any "wet floor" signs in the hotel lobby or in the stairwell leading to the upper floors of the hotel. Id. at ¶ 2. Ms. Emery avers that she attended her son's hockey game at approximately 8:00 p.m. on March 5, 2010, and that:

> My family and I returned to the hotel at around 8:45 or 9:00 p.m. that night. The weather outside was slushy. Upon our return, in the hotel lobby, I saw numerous wet footprints on the floor between the pool (located on the right) and the stairway (located on the left). The floor was slippery and I warned my children to be careful walking on it. I also saw tracks of water on the stairs leading from the lobby to the first floor. I did not see any "wet floor" signs in the lobby or in the stairwell leading to the upper floors.

Id. at ¶ 4. Ms. Emery indicates that, at around 9:30 p.m., Plaintiff asked her for help and she drove Plaintiff to a local hospital. Id. ¶ 2.

4

**IV.   DISCUSSION**

   **a.   Choice of Law**

A federal court with diversity jurisdiction must apply the law of the state in which it sits. See Erie R. R. v. Tompkins, 304 U.S. 64 (1938). Additionally, the Court must also apply the choice-of-law principles of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). "In New York, the forum state in this case, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 393 (2d Cir. 2001) (citations omitted). "It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis." Id. Where the applicable law from each jurisdiction provides different substantive rules, a conflict of laws analysis is required. See Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 14 (2d Cir.1996)(holding that there was an actual conflict where, with respect to damages, Ohio law allowed for consideration of loss of society but New York law did not); Bader v. Purdom, 841 F.2d 38, 39-40 (2d Cir.1988)(holding that there was an actual conflict where jurisdictions differed with respect to the availability of recovery under a theory of negligent parental supervision).

In tort actions, including negligence, if there is a conflict of laws, New York courts apply an "interests analysis," under which the law of the jurisdiction having the greatest interest in the litigation is applied. AroChem Int'l, Inc. v. Buirkle, 968 F.2d 266, 270 (2d Cir.1992); see also Babcock v. Jackson, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). "In deciding which state has the prevailing interest, we look only to

5

those facts or contacts that relate to the purpose of the particular laws in conflict. 'Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort.'" AroChem Int'l, 968 F.2d at 270 (quoting Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)). "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Cooney v. Osgood Mach., Inc., 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993).

In the present case, Plaintiff contends that New York law should apply. See dkt. # 48. Plaintiff argues that, in effect, the elements of New York law and the elements of Vermont law for a claim for negligence are principally the same, and therefore, no conflict of law exists between the two states. Id. This argument does not consider the full scope of a negligence claim in the two states; specifically, the states' rules governing comparative negligence. See MacFarlane v. Canadian Pacific Railway Co., 2004 U.S. Dist. LEXIS 19280 (D. Vt. 2004)(noting that for choice of law purposes the difference between New York's "pure comparative negligence doctrine" and Vermont's "modified negligence scheme" present a conflict of law); see also Taylor v. Stratton Corp., 2013 U.S. App. LEXIS 5351, 2 (2d Cir. 2013)(noting that under Vermont's modified comparative negligence statute a plaintiff cannot recover if he or she is more than 50 percent at fault). The difference in the states' comparative negligence rules constitutes a direct conflict between New York's and Vermont's laws.

In finding that a direct conflict of laws exists, the Court must decide which state has the "prevailing interest" in adjudicating the claim in order to determine which state's law to

apply.  In deciding which state has a greater interest in the case, two key factors the Court looks at are "the parties' domiciles and the locus of the tort." AroChem Int'l, 968 F.2d at 270.  Defendants are residents of, and/or do business in, in Vermont, see Am. Compl., ¶¶ 4-10, dkt. #12, and Plaintiff is a resident of and domiciled in New York. Id. ¶ 3.  Plaintiff's injury occurred on property located in Vermont. Id. ¶ 14.  Since Defendants are domiciled in Vermont and the accident took place in Vermont, the Court finds that Vermont has a greater interest in adjudicating the claims.  Therefore, Vermont law applies to the negligence claims in this action.

### b.     Claims against Days Inns Worldwide, Inc.

Defendants argue that the negligence claim against Days Inns Worldwide, Inc. ("DIW") is not legally cognizable because DIW is merely a franchisor and exercised no dominion or control over the location where Plaintiff was injured. Plaintiff argues that the language of the licensing agreement between DIW and the Days Inn Colchester Burlington Defendants creates a legal duty between DIW and Plaintiff.

"Landowners [have a general duty to use] reasonable care to keep [the] premises in a safe and suitable condition so that [an] invitee will not be unnecessarily or unreasonably exposed to danger." Menard v. Lavoie, 174 Vt. 479, 480 (Vt. 2002).  A plaintiff can only establish a breach of that duty if she can establish that a defendant had actual or constructive knowledge of a dangerous condition on the premises that caused a plaintiff's injury and failed to remedy it.  See Malaney v. Hannaford Bros. Co., 177 Vt. 123, 127 (Vt. 2004).  "Unless the area where the accident occurs is under the control of the defendant at  the time of the accident, a plaintiff cannot make out a cause of action in

7

negligence against the defendant, because there is no proof that the defendant owes the plaintiff any duty of care." Grann v. Green Mountain Racing Corp., 150 Vt. 232, 234 (Vt. 1988); see Crosby v. Great Atl. & Pac. Tea Co., 143 Vt. 537, 538 (Vt. 1983); Clogston v. Burlington Sch. Dist., 2011 Vt. Super. LEXIS 97 (Vt. Super. Ct. May 31, 2011).

In deciding whether a parent corporation may be held vicariously liable for acts of its franchisees, the Court determines whether the parent corporation controls the day-to-day operations of its subsidiary, and, more specifically, whether the parent corporation exercises a considerable degree of control over the instrumentality at issue. See Wendy Hong Wu v. Dunkin' Donuts, Inc., 105 F. Supp.2d 83, 87-94 (E.D.N.Y. 2000) (examining franchisor vicarious liability under New York law and several other jurisdictions), aff'd 2001 U.S. App. LEXIS 2544 (2d Cir. 2001). The inclusion of a general provision in a license agreement through which a parent corporation retains the right to enforce its standards does not "give rise to a legal duty" extending liability from a subsidiary to a parent corporation unless the parent corporation actually exercises the right of enforcement. Hong Wu, 105 F. Supp.2d at 88; see also Byron Fitz v. Days Inns Worldwide, Inc., 147 S.W.3D 467 (Tex. App. - San Antonio, 2004)(a hotel license agreement does not create an agency relationship); Tony Corrales v. Days Inns Worldwide, Inc., 2005 WL 4655135 (Colo. Dist. Ct.)(same); Anderson v. Turton Dev., Inc., 225 Ga. App. 270 (1997); Myszkowski v. Penn Stroud Hotel, Inc., 634 A.2d 622 (Pa. App. Ct. 1993)(same); Little v. Howard Johnson Co., 455 N.W.2d 390 (Mich. App. Ct. 1990)(same); Myers v. Holiday Inns, Inc., 1989 U.S. Dist. LEXIS 8373 (E.D. La. July 18, 1989)(same); Murphy v. Holiday Inns, Inc., 219 S.E.2d 874 (Va. 1975)(same).

Both parties agree that the licensing agreement between DIW and Days Inn

8

Colchester Burlington provides DIW the right to establish and control Days Inn Colchester Burlington's signage, quality assurance, guest service, maintenance, and cleanliness system standards. This right alone, however, does not impart a duty of care between DIW and the Plaintiff absent evidence that DIW took action to enforce its standards and exercised significant control over Days Inn Colchester Burlington's daily activities.

Plaintiff does not argue, let alone allege facts supporting, that DIW actually enforced any right retained in the licensing agreement or exercised any degree of control over Days Inn Colchester Burlington's day-to-day operations. Rather, the undisputed facts indicate that Days Inn Colchester Burlington's General Manager and the hotel's owner are directly responsible for the implementation and execution of the hotel's protocols. Further, the undisputed facts indicate that the hotel's owners conduct hiring, firing, and training of its employees, and make all day-to-day business decisions, without any influence or involvement by DIW.

In light of these circumstances, Plaintiff has failed to establish any genuine issue of material fact as to whether DIW exercised a sufficient degree of control over Days Inn Colchester Burlington's day-to-day activity to establish a basis for tort liability. Accordingly, DIW is dismissed from this action.

### c. Constructive Notice

Next, Defendants argue that they cannot be held liable because they did not create the alleged slippery condition (water on the hotel's steps) or have knowledge of it. As indicated above, to establish a prima facie case of negligence in a slip and fall action, the plaintiff must demonstrate that the defendant created the condition which caused the accident, or that the defendant had actual or constructive notice of the condition yet failed

9

to remedy it.  See Malaney, 177 Vt. at 127; Gonzalez v. K-Mart Corp,, 585 F. Supp.2d 501, 503 (S.D.N.Y 2008).  Constructive notice occurs when a defect is visible and apparent, and existed for a sufficient length of time prior to the accident such to permit a reasonably prudent hotel employee to discover and remedy it.  See Forcier v. Grand Union Stores, Inc., 128 Vt. 389, 393 (Vt. 1970).[1]

Plaintiff argues that a genuine issue of material fact exists as to whether Defendants knew or should have known that water had accumulated on a stairway in their hotel causing Plaintiff to slip and fall.  In support of this argument, Plaintiff offers evidence that on the night of the accident, the weather outside was "slushy;" the lobby of the hotel was covered in wet, dirty footprints; patrons had been using the pool throughout the day; and the hotel staff had not taken any remedial measures such as displaying a "wet floor" sign or mopping up any wet areas of the hotel.  Plaintiff also alleges that on the night of the accident, there were several wet footprints leading from the hotel pool to the stairwell where the accident occurred, and that there were tracks of water leading from the first floor lobby to that stairwell.  The affidavit of Angel Emery offers additional support to Plaintiff's argument, stating that a wet condition existed on the stairway approximately fifteen to thirty minutes prior to Plaintiff's fall.

From this, Plaintiff argues that due to either the water being tracked into the hotel

---

[1] ("'Foresight of harm lies at the foundation of negligence * * * Foreseeable consequences may be significant in the determination of the scope of legal duty and whether a duty of care had been violated.' Thompson v. Green Mountain Power Corp., 120 Vt. 478, 483, 485, 144 A.2d 786.  On the question of negligence, it is material to consider the consequences that a prudent man might have anticipated. Wakefield v. Levin, supra, at page 397, 110 A.2d 712.  And the circumstances and dangers are always to be taken into account in determining what is due care or evidence of it. McKirryher v. Yager, 112 Vt. 336, 343, 24 A.2d 331.")

from outside or water being tracked across the hotel from its pool, Defendants knew or should have known that water had been collecting on the stairwell for a sufficient period of time thereby creating a dangerous condition that should have been remedied.

      Defendants argue that Plaintiff has failed to raise a material question of fact as to whether Defendants were on notice of the alleged dangerous condition. In this regard, Defendants assert that Plaintiff cannot show that the wet condition she complains of existed for a sufficient period of time to place Defendants on notice of the condition and provide an opportunity to remedy it. In support of this argument, Defendants claim that, on the day of the accident, the subject stairway had been cleaned between 8 a.m. and 3 p.m. by hotel staff; the stairway was inspected at some point between 3 p.m. and 9 p.m. by hotel staff; and the stairway was traversed by hotel staff at approximately 6:30 p.m. and that none of these instances revealed a wet, dangerous condition. Defendants further claim that neither Plaintiff nor anyone in her traveling group reported witnessing a wet condition in the lobby or on the stairway during their arrival to the hotel or prior to their departure for a hockey tournament.

      Refuting the affidavit of Angel Emery, Defendants argue that even if it were true that a wet condition existed upon the stairway fifteen to thirty minutes prior to Plaintiff's fall, Emery never reported seeing such a condition to hotel staff, and as such, the Defendants were never put on notice of the dangerous condition and not given an adequate opportunity to provide a remedy. Further, Defendants argue that any proof of a wet and dangerous condition caused by the weather or patrons using the pool only pertains to the lobby of the hotel, not the stairway in question.

      It stands to reason that a hotel, at any given time, could be full of patrons entering

11

and exiting the hotel or traveling within the hotel between the many different amenities. The typical patterns of ingress and egress, combined with weather yielding rain and snow, could certainly lead to rain and snow finding its way into the hotel, thereby creating wet conditions upon the areas that patrons walk.  Additionally, it is also conceivable that hotel guests who use a hotel pool may leave the pool area while still wet and thereby track water behind them, also creating a wet condition in their wake.

Viewing the evidence in the light most favorable to Plaintiff, a reasonable fact finder could conclude that on the night in question, patrons wet from rain or snow from outside the hotel, or wet from the pool water, tracked water on the hotel's stairway as they made their ways to their rooms.   Further, a reasonable jury could conclude that, given the snowy, slushy, and wet conditions outside, and numerous guests using the pool, Defendants should have known of the risk of a wet stairway and should have taken remedial steps to cure the dangerous situation.   While Defendants have argued that the stairway in question had been checked and cleaned at various times throughout the day, the last inspection seemingly took place almost three hours before the accident, leaving sufficient time not only for a dangerous condition to manifest, but also for that condition to be discovered and remedied.

Viewed in the light most favorable to the non-moving party, the Court finds that Plaintiff has raised genuine questions of material fact as to whether a wet and slippery condition existed on the stairway on the date and time in issue, and whether, under the circumstances, Defendants should have known of the dangerous condition in sufficient time to discover it and take remedial action.  Therefore, Defendants' motion for summary judgment is denied with regard to the negligence claims against the remaining

Defendants.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment [dkt. # 44] is **GRANTED IN PART and DENIED IN PART**. The motion is granted inasmuch as all claims against Days Inns Worldwide, Inc. are **DISMISSED**. The motion is denied in all other respects.

**IT IS SO ORDERED**.

Dated: April 4, 2014

_____
Thomas J. McAvoy
Senior, U.S. District Judge